UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tracy L. Reid, individually and on
behalf of M.A.R.,

                    Plaintiff,

v.

BCBSM, Inc., HealthPartners Insurance
Company, Minnesota Department of
Commerce, Michael Rothman in his
capacity as Commissioner of the Minnesota
Department of Commerce, and Blue Cross
and Blue Shield of Minnesota Medical Plan,
Group No. 4G175-00,

                    Defendants.

Civ. No. 12-3005 (RHK/FLN)

**MEMORANDUM OPINION
AND ORDER**

---

Tracy L. Reid, Minneapolis, Minnesota, Plaintiff pro se.

Joel A. Mintzer, Robins Kaplan Miller & Ciresi LLP, Minneapolis, Minnesota, for
Defendants BCBSM, Inc. and Blue Cross and Blue Shield of Minnesota Medical Plan,
Group No. 4G175-00.

Gregory R. Merz, Ashley M. Bennett Ewald, Gray Plant Mooty Mooty & Bennett, PA,
Minneapolis, Minnesota, for Defendant HealthPartners Insurance Company.

Oliver J. Larson, John R. Mule, Minnesota Attorney General's Office, Saint Paul,
Minnesota, for Defendants Minnesota Department of Commerce and Michael Rothman.

---

## INTRODUCTION

      Plaintiff Tracy Reid commenced this action on behalf of herself and M.A.R., her

seven-year-old son who has autism spectrum disorder ("ASD"),[1] after her previous and

---

[1] "Autism is a group of developmental brain disorders, collectively called autism spectrum
disorder (ASD). The term 'spectrum' refers to the wide range of symptoms, skills, and levels of

current health insurers, Defendants HealthPartners Insurance Company ("HealthPartners") and BCBSM, Inc. ("Blue Cross"[2]) respectively, excluded coverage of certain intensive behavioral therapies used to treat her son's ASD. Reid asserts Defendants Blue Cross, HealthPartners, the Minnesota Department of Commerce ("MNDC"), and MNDC's Commissioner, Michael Rothman, violated the Americans with Disabilities Act ("ADA"), Employee Retirement Income Security Act of 1974 ("ERISA"), and several other statutes. All Defendants now move to dismiss Reid's claims; for the reasons set forth below, MNDC and Rothman's Motion and HealthPartners' Motion will both be granted and Blue Cross's Motion will be granted in part and denied in part.

## BACKGROUND

The following facts are alleged in Reid's Second Amended Complaint:[3]

Plaintiff's son, M.A.R., was identified as developmentally delayed by his first

---

impairment, or disability, that children with ASD can have. Some children are mildly impaired by their symptoms, but others are severely disabled."
http://www.nimh.nih.gov/health/topics/autism-spectrum-disorders-pervasive-developmental-disorders/index.shtml (last visited Nov. 21, 2013). For M.A.R., ASD limits activities including "socialization, communication, emotional regulation, behavior, physical activity, and M.A.R.'s ability to care for himself and keep himself safe." (2d Am. Compl. ¶ 15.) Reid alleges—and Defendants do not dispute in these Motions—that M.A.R. is "disabled" by ASD.

[2] The Court uses "Blue Cross" to refer to named Defendants BCBSM, Inc. d/b/a Blue Cross BlueShield of Minnesota and Blue Cross and Blue Shield of Minnesota Medical Plan, Group No. 4G175-00, collectively.

[3] Along with her Memorandum, Reid submits an affidavit and exhibits thereto, but as these matters are neither public record nor embraced by the pleadings, the Court will not consider them in deciding these Motions. See e.g., Minn. Majority v. Mansky, 708 F.3d 1051, 1056 (8th Cir. 2013) (In addition to the pleadings themselves, "[a] court reviewing a motion to dismiss may also consider some public records, materials that do not contradict the complaint, or materials necessarily embraced by the pleadings.") (quotations omitted).

birthday. He began receiving physical therapy to address his delayed walking, speech, and motor skills, and special-education services to address his delayed cognitive development. (2d Am. Compl. ¶¶ 9–11.) At age two, he was referred to the Alexander Center for treatment by a developmental pediatrician, a physical therapist, an occupational therapist, and a speech therapist, all of which was covered by Reid's health-insurance provider, HealthPartners. (Id. ¶ 12.) At that time, M.A.R. exhibited multiple violent tantrums daily, aggressive behavior toward his peers and school staff, and severe social limitations. (Id. ¶ 13.) M.A.R. was diagnosed with ASD in June 2008 and referred to the Minnesota Early Autism Project ("MEAP") for intensive behavioral therapy[4] and other treatment, which took up to forty hours per week. (Id. ¶¶ 16–17.) Reid alleges intensive behavioral therapy is the most effective treatment for children with ASD and relies upon numerous medical studies supporting this proposition. (Id. ¶¶ 27–34.) For M.A.R., it greatly reduced his violent tantrums and aggressive behavior, boosted his IQ, and allowed him to be integrated 100% of the time with his non-disabled peers at school. (Id. ¶¶ 50–54.) By June 2012, M.A.R. required only limited assistance and consulting from MEAP.

Reid's health-insurance policy with HealthPartners specifically excluded coverage of "Intensive behavioral therapy treatment programs for the treatment of autism spectrum disorders, including ABA, IEIBT and Lovaas." (Id. ¶ 61.) When Reid sought benefits

---

[4] For the purposes of this Order, "intensive behavioral therapy" includes intensive early interventional behavioral therapy ("IEIBT"), early intensive behavioral intervention ("EIBI"), applied behavioral analysis ("ABA"), the Lovaas method, and other early intensive therapies focused on identifying and modifying behaviors that interfere with normal developmental processes. (See 2d Am. Compl. ¶ 26.)

for M.A.R.'s intensive behavioral therapy, HealthPartners denied her claim, relying upon this coverage exclusion. She appealed the decision, and HealthPartners affirmed its denial, asserting M.A.R.'s intensive behavioral therapy constituted IEIBT, and therefore was not covered. HealthPartners' final denial letter referred Reid to covered providers for ASD treatment, including the Alexander Center, the Fraser Center, and the Associated Clinic of Psychology. But Reid had already consulted with the Alexander Center, which referred her to MEAP, and the Fraser Center and Associated Clinic of Psychology did not offer treatment appropriate for M.A.R. After exhausting the internal appeals procedure, Reid sought review from MAXIMUS, an independent review organization that contracted with MNDC and the Minnesota Department of Health to review insurance claims. In February 2011, MAXIMUS affirmed HealthPartners' denial of coverage based on her plan's exclusion of such intensive therapy for ASD. Reid filed a complaint with the Minnesota Department of Human Rights, which was ultimately dismissed.

In January 2012, Reid—by that time self-employed—contracted with Defendant Blue Cross for a new health insurance plan for herself and M.A.R., which did not exclude intensive behavioral therapy. Nonetheless, Blue Cross denied her claim for benefits in February, concluding M.A.R.'s therapy was not "medically necessary" and therefore not covered. Reid successfully appealed this decision.

In November 2012, Reid received notice from Blue Cross that it was changing Reid's policy to exclude coverage for EIBI and ABA therapies to treat ASD, based on its determination that the "prevailing practice" in the industry was to cover only medical services for ASD. The letter stated Blue Cross would "continue to cover a wide range of

medical services related to autism, including diagnosis and other forms of therapy, including speech[,] physical, and occupational therapies." Reid called Blue Cross to inquire how she could appeal this change in coverage and it informed her there was no appellate process available.

In response to both insurance companies' refusals to cover M.A.R.'s therapy and MNDC's approval of HealthPartner's denial, Reid filed the instant action against Blue Cross, HealthPartners, MNDC, and Rothman. She asserts seven claims, for violations of: Minnesota's Mental Health Parity Act ("MMHPA") (Count I); Minnesota's Human Rights Act ("MHRA") (Count II), the ADA (Count III), Minnesota's Deceptive Trade Practices Act ("MDTPA") against Blue Cross only (Count IV); Minnesota's Consumer Fraud Act ("CFA") against Blue Cross only (Count V); the Patient Protection and Affordable Care Act ("PPACA") against Blue Cross only (Count VI); and ERISA against Blue Cross and HealthPartners (Count VII). In her Complaint, Reid seeks only declaratory and injunctive relief, not compensatory damages. All Defendants now move to dismiss.

**STANDARD OF DECISION**

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if recovery appears unlikely. Id. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

**I. Standing**

Before addressing the merits of Reid's claims, the Court must first decide if Reid has standing to pursue her claims, that is, whether she "is entitled to have the court decide the merits of the dispute." Warth v. Seldin, 422 U.S. 490, 498 (1975). HealthPartners contends Reid does not have standing to pursue declaratory or injunctive relief against it, and the Court agrees.

The most basic elements of the standing doctrine are derived from the Constitution. Article III limits the federal judicial power to "cases" and "controversies." That a plaintiff have standing is a fundamental requirement of a justiciable case or controversy. "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). A plaintiff must allege she suffered a "personal injury" that is "fairly traceable to the defendant's allegedly unlawful conduct" and "likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984).

Here, Reid cannot establish the third element of standing because the injunctive relief she seeks against HealthPartners will *not* redress her alleged injury. Reid alleges HealthPartners injured her and M.A.R. by denying benefits for M.A.R.'s intensive behavioral therapy. But Reid's health-insurance policy with HealthPartners terminated in December 2011, so her alleged injury is in the past. Yet, she does not seek damages to remedy this past harm, but instead seeks only *prospective* relief against HealthPartners in the form of declaratory and injunctive relief. Even if the Court were to grant her requested relief, it would do nothing to redress HealthPartners' denial of benefits in 2011 and there is no threat of ongoing or future harm. Accordingly, she does not have standing to pursue her claims against HealthPartners and they will be dismissed. See Park v. Forest Serv. of U.S., 205 F.3d 1034, 1037 (8th Cir. 2000) ("Past exposure to illegal conduct does not in itself show a present case or controversy *regarding injunctive relief* . . . if unaccompanied by any continuing, present adverse effects.") (emphasis added);

Walls v. Sagamore, Ins. Co., 274 F.R.D. 248, 253 (W.D. Ark. 2011) (plaintiff no longer insured by defendant lacked standing to pursue injunctive or declaratory relief).

## II. ADA (Count III)

Reid alleges Blue Cross's exclusion of behavioral therapy for ASD violates the ADA. Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privilege, advantages, or accommodations of any place of public accommodation."[5] 42 U.S.C. § 12182(a). A term of a health-insurance policy is "disability based" and therefore violates the ADA if "it singles out a particular disability (e.g., deafness, AIDS, schizophrenia), a discrete group of disabilities (e.g., cancers, muscular dystrophies, kidney diseases), or disability in general (e.g., non-coverage of all conditions that substantially limit a major life activity)." Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677–78 (8th Cir. 1996) (citation and quotations omitted). On the other hand, "[i]nsurance distinctions that apply equally to all insured employees, that is, to individuals with disabilities and to those who are not disabled, do *not* discriminate on the basis of disability." Id. (emphasis added).

Reid alleges Blue Cross's exclusion of behavioral therapy is a disability-based distinction because it only excludes the therapy for the treatment of ASD. Blue Cross argues its exclusion is not disability-based because it applies equally to all persons,

---

[5] Whether Reid may sue her insurer under Title III of the ADA has not been raised in these Motions, so the Court will assume she may. See Winslow v. IDS Life Ins. Co., 29 F. Supp. 2d 557, 563 (D. Minn. 1998) (Davis, J.) ("public accommodations" include insurance policies for the purposes of Title III of the ADA); Wai v. Allstate Ins. Co., 75 F. Supp. 2d 1, 8 & n.7 (D.D.C. 1999) (collecting cases on the issue and concluding insurance is covered by Title III).

- 8 -

disabled or not. The parties rely upon two Eighth Circuit cases dealing with coverage exclusions under the ADA to support their respective positions.

Blue Cross relies upon <u>Krauel</u>. In <u>Krauel</u>, the plaintiff's health-insurance policy did not cover treatment for infertility, a condition which she claimed rendered her disabled. <u>Id.</u> at 675–76. The court concluded that (1) infertility was not a disability and (2) the exclusion of infertility treatments was not a disability-based distinction because it applied equally to disabled and non-disabled persons. By way of comparison, the court offered a hypothetical example of a policy that offers only limited benefits for eye care. It concluded such a policy would not be in violation of the ADA, stating:

> Such broad distinctions which apply to the treatment of a multitude of dissimilar conditions and which constrain individuals both with and without disabilities, are not distinctions based on disability. Consequently, although such distinctions may have a greater impact on certain individuals with disabilities, they do not intentionally discriminate on the basis of disability and do not violate the ADA.

<u>Id.</u> at 678.

Blue Cross compares the exclusion in <u>Krauel</u> to its behavioral-therapy exclusion for ASD and urges this Court reach the same result. But while <u>Krauel</u> determined the plaintiff's infertility was *not* a disability, it is undisputed that M.A.R.'s ASD *is*. And Blue Cross's exclusion of this ASD treatment does not, in practice, apply equally to all people—it affects only disabled persons because non-disabled persons would not require such intensive treatment. And unlike the example of "eye care," which is a "broad" distinction that applies to the treatment of "a multitude of dissimilar conditions," Blue Cross's exclusion is narrow and applies to the treatment of only one condition—ASD. For these reasons, the Court concludes that <u>Krauel</u> is not applicable here.

Reid directs the Court to <u>Henderson v. Bodine Aluminum, Inc.</u>, 70 F.3d 958, 959 (8th Cir. 1995). In <u>Henderson</u>, the plaintiff moved for a preliminary injunction requiring her insurer to cover high-dose chemotherapy ("HDCT") for her breast cancer. The insurer covered HDCT for the treatment of other forms of cancer, but not for the treatment of breast cancer. The plaintiff argued this was a disability-based distinction and the Eighth Circuit tentatively agreed, concluding that her argument "ha[d] a sufficient likelihood of success on the merits." <u>Id.</u> at 960. The court stated, "if the evidence shows that a given treatment is non-experimental—that is, if it is widespread, safe, and a significant improvement on traditional therapies—and the plan provides the treatment for other conditions directly comparable to the one at issue, the denial of that treatment arguably violates the ADA." <u>Id.</u> Under this reasoning, Blue Cross's exclusion may violate the ADA if Blue Cross covers the same behavioral therapy for the treatment of other "directly comparable" conditions. And although Reid does not specifically identify for which conditions intensive behavioral therapy is a covered treatment under Blue Cross's policy, she does allege such a coverage differential. (2d Am. Compl. ¶ 96.) Accordingly, the Court concludes she has stated a claim for relief against Blue Cross for violation of the ADA.[6]

---

[6] Reid also asserts that MNDC and Rothman violated the ADA "when they approved the contract exclusion of the Defendants HealthPartners and [Blue Cross] denying EIBI." But she has not alleged any facts to indicate MNDC's review (through its contractor, MAXIMUS) was discriminatory. She alleged only that the *plan* it reviewed was discriminatory. This allegation is not sufficient to state a plausible claim for relief against MNDC or Rothman under the ADA.

## III. ERISA (Count VII)

Reid asserts that Blue Cross's exclusion of intensive behavioral therapy for ASD violates ERISA. But this assertion misconstrues the scope of an ERISA action. ERISA permits a plan participant, such as Reid, to sue "to recover benefits due to [her] under the terms of [her] plan." 29 U.S.C. § 1132(a)(1)(B). However, Reid's claim is not that behavioral therapy *is* covered by her plan, her claim is that it *should be*. So she is not seeking to recover benefits due under the terms of the plan, she is seeking to change the terms of the plan, which ERISA does not permit.

In support of her claim, Reid cites several ERISA cases holding that a plan administrator abused its discretion by denying coverage for behavioral therapy like M.A.R.'s. But there is an important difference between Reid's policy and the policies in those cases: Reid's policy specifically excludes EIBI and ABA from covered treatments and the other policies did not. In the cases Reid relies upon, the plaintiffs' policies excluded "experimental or investigative" treatments or treatments that were not "medically necessary," and the administrators denied coverage by characterizing behavioral therapy for ASD as fitting one of those exclusions. E.g., Potter v. Blue Cross Blue Shield of Mich., No. 10-cv-14981, 2011 WL 9378789, at *2 (E.D. Mich. July 14, 2011); McHenry v. PacificSource Health Plans, 679 F. Supp. 2d 1226, 1237 (D. Or. 2010). These *interpretations* of the policy exclusions were considered abuses of discretion because of the overwhelming evidence that behavioral therapy is neither an investigative nor experimental treatment for ASD and may be medically necessary. Reid, on the other hand, does not challenge Blue Cross's *interpretation* of its policy

- 11 -

exclusion—she does not dispute the characterization of M.A.R.'s therapy as EIBI. Instead, she is challenging the *validity* of the exclusion, a challenge which is beyond the scope of ERISA.[7]

## IV. Consumer Protection Claims (Counts IV & V)

Reid asserts Blue Cross violated two Minnesota consumer-protection statutes when it claimed its decision to exclude coverage was based on the "prevailing practice" in the insurance industry, an assertion which Reid maintains is false. Blue Cross contends these claims are preempted by ERISA because they seek to recover denied (or rather, excluded) benefits. See e.g., Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 281 (1st Cir. 2000) (ERISA preempts consumer protection claims); Hansen v. Continental Ins. Co., 940 F.2d 971, 979 (5th Cir. 1991) (same). In response, and to avoid ERISA preemption, Reid denies seeking recovery of any benefits but she has not alleged any other harm. (Pl.'s Mem. in Opp'n at 36.) The Court may presume, then, that she is seeking injunctive or declaratory relief under the statutes, but this too presents a problem—a plaintiff is only entitled to injunctive relief if there is some threat of future or irreparable harm, and Reid has pleaded neither. See Olen v. N. Tier Retail, LLC, Civ. No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. 2012) (Frank, J.) (injunctive relief under the MDTPA is "available only to a person likely to be damaged by a deceptive trade practice in the future") (quotation omitted); Gardner v. First Am. Title Ins. Co., 296

---

[7] In her Complaint, Reid also alleges Blue Cross violated ERISA by failing to provide her with an avenue to appeal its decision to exclude coverage for EIBI, but she does not address this alleged violation in her Memorandum. Regardless, ERISA only requires Blue Cross to afford her an appeal of the denial of a claim for benefits, not the decision to change her policy's coverage. See 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. So this allegation also fails to state a claim under ERISA.

F. Supp. 2d 1011, 1020 (D. Minn. 2003) (Kyle, J.); Beutow v. A.L.S. Enters., Inc., 650 F.3d 1178, 1184–85 (8th Cir. 2011) (plaintiff must demonstrate irreparable injury to obtain injunctive relief under CFA). Because Reid has failed to allege any harm that would entitle her to relief under the consumer-protection statutes, her claims must be dismissed.

## V.     MMHPA, PPACA & MHRA

Although Reid pleaded seven claims, she defends only four of them in her opposition brief. In response to the Court's questioning at oral argument regarding the other three, she conceded that she had not located any authority to support her MMHPA or ACA claims. (9/30/13 Hr'g Tr. 16–17.) Accordingly, the Court will dismiss those claims. However, Reid did not concede her MHRA claim (Count II).

She alleges Blue Cross's exclusion of intensive behavioral therapy for ASD violates the MHRA. The MHRA, much like the ADA, prohibits the denial of the "full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accomodations of a place of public accommodation because of . . . disability." Minn. Stat. § 363A.11, subd. 1(1). Indeed, the two statutes are sufficiently similar that "[c]laims under the MHRA are analyzed the same as claims under the ADA." Somers v. City of Minneapolis, 245 F.3d 782, 788 (8th Cir. 2001). As Reid's ADA claim against Blue Cross will proceed, so too will her MHRA claim.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED**:

(1) HealthPartners' Motion to Dismiss (Doc. No. 73) and MNDC and Rothman's joint Motion to Dismiss (Doc. No. 77) are **GRANTED** and Reid's claims against those Defendants are **DISMISSED WITHOUT PREJUDICE**; and

(2) Blue Cross's Motion to Dismiss (Doc No. 67) is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** as to Counts I, IV, V, VI, & VII of the Second Amended Complaint (Doc. No. 59) and those claims are **DISMISSED WITHOUT PREJUDICE**. The Motion is **DENIED** as to Counts II and III, which remain pending against the Blue Cross Defendants.[8]

Dated: November 21, 2013

                                                                       s/Richard H. Kyle
                                                                       RICHARD H. KYLE
                                                                       United States District Judge

---

[8] Defendants BCBSM, Inc. and Blue Cross and Blue Shield of Minnesota Medical Plan, Group No. 4G175-00.